# Supreme Court of the Navajo Nation

**Aurelia Charles, Plaintiff,**

v.

**Furniture Warehouse, Defendant.**
**Decided July 12, 1994**

## OPINION

Before YAZZIE, Chief Justice, and AUSTIN, Associate Justice.

Louis Denetsosie, Esq., Window Rock, Navajo Nation (Arizona), for the Plaintiff; and Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for the Defendant.

Opinion delivered by Austin, Associate Justice.

The Chinle District Court presented the following certified question to this Court: Whether all claims of wrongful termination of employment of Navajos, employed within the Navajo Nation, must be submitted to the Office of Navajo Labor Relations (ONLR), rather than being brought directly to the district courts of the Navajo Nation? We accepted the certified question pursuant to *Navajo Housing Authority v. Betsoi*, 5 Nav. R. 5 (1984).

I

Aurelia Charles, an enrolled member of the Navajo Nation, filed a complaint against Furniture Warehouse, with the Chinle District Court on July 17, 1992, on the following grounds: 1) wrongful termination of employment; 2) breach of oral contract; 3) breach of implied contract not to terminate except for just cause; 4) violation of the Equal Pay Act, 29 U.S.C. § 206(d) (1992); and 5) violation of the Fair Labor Standards Act, 29 U.S.C. § 207 (1992).

Charles alleged in her complaint that she began working as a collection agent and delivery person for Furniture Warehouse on or about January 15, 1985, in Chinle, Navajo Nation (Arizona). Furniture Warehouse has its principal place of business outside the Navajo Nation at Gallup, New Mexico. Charles alleged she was terminated on October 15, 1991, after being temporarily disabled as a result of an accident in one of Furniture Warehouse's vehicles. Charles further alleged she and Howard Newsom, president of Furniture Warehouse, entered into an oral agreement on October 12, 1991, that she would only conduct telephone collections until she got well. Charles claims Furniture Warehouse breached this agree-

ment on October 14, 1991, by having a delivery truck delivered to her and then terminating her for not making deliveries.

## II

The issue before the Court is one of first impression. Charles is alleging violations of the Navajo Preference in Employment Act (NPEA) and of federal law, namely violations of the Equal Pay Act, 29 U.S.C. § 206(d) (1992), and the Fair Labor Standards Act, 29 U.S.C. § 207 (1992). Thus, the question is whether an aggrieved party alleging violations of the NPEA and statutory violations outside the NPEA should bring an action in a district court or before the Navajo Nation Labor Commission?

## III

The Navajo Preference in Employment Act sets forth the policy of the Navajo Nation with respect to the preference in employment of Navajos. The purposes of the NPEA are to provide employment opportunities and training, promote economic development; lessen the Navajo Nation's dependence upon off-reservation sources of employment and income; foster economic self-sufficiency; protect the health, safety, and welfare of Navajo workers; and to foster cooperative efforts with employers to expand employment opportunities. 15 N.T.C. § 2.A.1-7 (1990).

When a violation of the NPEA occurs, a claimant can file a charge with ONLR. 15 N.T.C. § 10. B.1, 3 (1990). Also, ONLR can file a charge on its own initiative. 15 N.T.C. § 10. B.1 (1990). An investigation is then conducted by ONLR to determine whether there is probable cause to believe a violation of the NPEA has occurred. 15 N.T.C. § 10.C.1 (1990). A hearing will then be held by the Navajo Nation Labor Commission (NNLC). 15 N.T.C. § 11.C. (1990).

The NNLC and ONLR have jurisdiction over violations of the NPEA only. The 1990 amendments to the NPEA state as follows: "compliance with the Act shall be monitored and enforced by ONLR." 15 N.T.C. § 10.A. (1990). The amendments also state that "[A]ny Navajo may file a charge claiming a violation of his/her rights under the Act." 15 N.T.C. § 10. B.1 (1990). Thus, the NNLC and ONLR have the authority to remedy NPEA violations. However, these administrative agencies do not have the authority to redress violations of statutory law beyond the NPEA.

The question of whether a complainant is required to bring a claim before the NNLC implicates the doctrine of exhaustion of administrative remedies. In *Navajo Skill Center v. Benally*, 5 Nav. R. 93 (1986), this Court stated that exhaustion of administrative remedies is the concept that administrative agencies should complete their procedures before the courts interfere. *Id.* at 96. The Court believed that exhaustion of remedies serves the interest of judicial efficiency and economy; is a process which has been committed to the agency by the legislature and it should be allowed to run its course; prevents confusion that may arise if a party

seeks relief in two forums; and requires parties to address their grievances without going to court. *Id.*

Exhaustion of administrative remedies is, however, not always required. *Id.* It is not required if the administrative remedy is inadequate, which includes an unreasonable delay, inability to come to a decision, or lack of authority to grant the relief the party is entitled to. *Id.* Also, exhaustion of administrative remedies is not required if irreparable injury is imminent or the agency is acting in excess of its authority. *Id.* Thus, if the complainant alleges one of these exceptions, the complainant is not required to exhaust the agency's remedies.

When the complainant is not required to exhaust the agency's remedies, he or she may file with a district court because the district courts have general civil jurisdiction, which includes jurisdiction to hear claims raised under applicable federal laws. 7 N.T.C. §§ 204, 253 (1985).

In the case before us, the NPEA does not give the NNLC exclusive jurisdiction over wrongful termination of employment claims. The amendments to the NPEA state as follows: "Failure to file a charge within the time limitations prescribed herein shall bar proceedings on the related claim before the Commission or in any Court of the Navajo Nation." 15 N.T.C. § 10.B.6. (b)(ii) (1990). Thus, the district courts can hear NPEA claims if the parties have exhausted their administrative remedies or fall under one of the exceptions to the rule.

The question then becomes, which forum, the district court or the NNLC, should determine whether the complainant's allegations fall under one of the exceptions to the exhaustion of remedies rule? The NNLC must make that determination. Under the NPEA, the ONLR is given the specific responsibility of monitoring and enforcing the Act, 15 N.T.C. § 10.A. (1990), and to perform that duty, it must work closely with the NNLC — the administrative hearing body under the NPEA. The ONLR is also required to investigate and attempt to conciliate charges when it finds probable cause to believe the NPEA has been violated. 15 N.T.C. §§ 10.C, 10.F. (1990). To permit persons with employment claims to bypass this investigation and conciliation process and proceed directly to the courts would defeat one of the principle goals of the NPEA: "To foster cooperative efforts with  employers to assure expanded employment opportunities for  the Navajo work force." 15 N.T.C. § 2.A.7 (1990).

There are considerations of judicial efficiency and economy as well. To allow complainants to immediately bring their claims to the district courts would overload an already overburdened Navajo Nation Court System. *See, PC&M Construction Co. v. Navajo Nation, et al.,* 7 Nav. R. 58, 60-61 (1993). Furthermore, it would open the flood gates and encourage complainants to concoct claims outside the NPEA, in an attempt to circumvent the administrative process. Thus, the NNLC, the agency with expertise on NPEA matters, must initially determine whether the complainant is alleging valid claims of statutory violations outside of the NPEA.

In the case at bar, the NNLC must determine whether Charles is alleging valid

claims of statutory violations outside of the NPEA. If the NNLC finds these claims to be valid, it must dismiss the entire complaint, including the NPEA claims, because it does not have the jurisdiction to address statutory violations outside the NPEA. Any remedy provided by the NNLC would be inadequate and Charles would not be required to exhaust administrative remedies. Once the complaint is dismissed by the NNLC, Charles may bring the action in a district court.

There needs to be a starting point in this process of determining the different aspects of employer-employee relationships. It is only reasonable to begin with the agency charged with the responsibility to oversee these matters. The Navajo Nation has a comprehensive and detailed plan that has regulations analogous to the National Labor Relations Board and covers the areas of concern to the working Navajo public similar to any federal and state employment statute, if not better. The Navajo Nation Council has charged the ONLR and NNLC with the responsibility to assure compliance with those laws. Thus, the process must be initiated with the ONLR and the NNLC.

If the NNLC determines there are valid claims of statutory violations outside the NPEA, it cannot split the complaint into two actions, and address the NPEA claims while dismissing the claims alleging statutory violations outside the NPEA. It would be a burden for the parties to appear in two separate forums. It would also be expensive for the parties to litigate two separate actions. Finally, it would result in conflicting decisions from the two separate forums and create confusion for the parties.

Because there is a possibility that the statute of limitations on a statutory violation outside the NPEA may run out, any statutory time limits outside of the NPEA will be tolled while the NNLC determines whether it can hear the complainant's claims.

For the reasons stated above, we hold that the NNLC must first determine whether a valid claim of a statutory violation within NPEA is being made and if not, the NNLC must dismiss the claim. The action must then be brought in the district court.

The Chinle District Court shall transfer this case to the Navajo Nation Labor Commission for proceedings consistent with this opinion.